[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2011
JOHN LEY
CLERK

_____

No. 09-13435

_____

D.C. Docket No. 08-00330-CR-SLB-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

W.B.H.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 13, 2011)

Before CARNES, KRAVITCH and FARRIS,[*] Circuit Judges.

CARNES, Circuit Judge:

The Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §

16901, et seq., which was enacted in 2006, requires criminals who have been

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

convicted of a sex offense to register as sex offenders. In 1987, nearly 20 years before that Act was enacted, the defendant in this case was convicted of first degree rape. If he had ended his criminal career back then, he might not have had to register under SORNA. Instead of giving up crime, however, the defendant branched out into another field of criminality and in 2009 was convicted in this case for conspiracy to violate federal drug laws. Because of the defendant's earlier youthful offender adjudication on the rape charge, in sentencing him on this federal drug charge the court imposed as a condition of supervised release that he register as a sex offender under SORNA. This is the defendant's direct appeal from that sentence, challenging the requirement that he register as a sex offender.

The issue is whether it violates the Ex Post Facto Clause to require a defendant who is convicted of a post-SORNA crime that is not a sex offense to register as a condition of supervised release because of a pre-SORNA, Alabama Youthful Offender Act conviction that is a sex offense.[1] See U.S. Const. Art. I, § 9, cl. 3. The answer, as we will explain, depends on whether the SORNA registration requirements are civil or criminal in nature for ex post facto purposes. As we will also explain, those registration requirements are, on the whole, civil in

---

[1]Under Alabama law a youthful offender adjudication is not considered to be a criminal conviction. Ex parte T.B., 698 So. 2d 127, 129 (Ala. 1997). It is, however, treated as a conviction under SORNA, provided that it involved conduct "comparable to or more severe than aggravated sexual abuse," see 42 U.S.C. § 16911(8), which rape is. For that reason, throughout this opinion we refer to W.B.H.'s youthful offender adjudication as a conviction.

nature.

I.

On December 25, 1986 a woman filed a report with the Limestone County, Alabama Sheriff's Department accusing W.B.H.[2] and four other men of having "sex with [her] without her permission." Police arrested W.B.H., who was then 18 years old, and charged him with first degree rape. In 1987 he was convicted of that charge and sentenced to 3 years probation under Alabama's Youthful Offender Act. See Ala. Code § 15-19-1 et seq. Under that Act, the records of the proceeding were sealed but could be opened for inspection in the court's discretion and were also to be considered at sentencing for any later crime. Ala. Code § 15-19-7(a), (b). At the time W.B.H. was convicted of rape no law, state or federal, required that he register as a sexual offender.

W.B.H. went on to become a major drug distributor. In 2008 he pleaded guilty to conspiracy to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana. See 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). The district court sentenced him to 10 years in prison and 5 years of supervised release.

---

[2] The district court sealed the record in this case for safety reasons because W.B.H. had cooperated with the government. For the same reason, we use his initials instead of his name in this opinion.

Because of W.B.H.'s 1987 rape conviction, the district court when it sentenced him in 2009 required as a condition of supervised release that he register as a sex offender under SORNA, which had been enacted in 2006. The court warned W.B.H. that his failure to comply with SORNA's registration requirements would not only violate the terms of his supervised release but could also be a criminal violation of SORNA itself. W.B.H. preserved his objection to being required to register as a sex offender and then filed this appeal, contending that requiring him to register as a sex offender under SORNA because of a sex offense he was convicted of as a youthful offender nearly 20 years before SORNA was enacted violates the Ex Post Facto Clause.

II.

Congress enacted SORNA as a part of the Adam Walsh Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified at 42 U.S.C. § 16901, et seq.), "in response to the vicious attacks by violent predators." 42 U.S.C. § 16901. Its purpose was to "protect the public from sex offenders and offenders against children" through "a comprehensive national system for the registration of those offenders." Id. SORNA excludes from its registration requirements offenders convicted in "certain juvenile adjudications" but includes any who were "14 years

4

of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse . . . or was an attempt or conspiracy to commit such an offense." Id. § 16911(8).

SORNA categorizes convicted sex offenders who are required to register based on the severity of their crimes, pegging the registration requirements to those offender categories. Id. § 16911(1)–(4). All sex offenders covered by the statute must register, and verify their information, in person: the least dangerous category annually, the middle category every six months, and the most dangerous category every three months. Id. § 16916(1)–(3). When registering, they all must provide their names, social security numbers, addresses, and vehicle descriptions. Id. § 16914(a).

The jurisdiction where the sex offenders register must keep on file each offender's fingerprints, palm prints, a DNA sample, and other identifying information. Id. § 16914(b). Each jurisdiction is required to make available on the internet "all information about each sex offender in the registry," subject to some exceptions, such as one for social security numbers. Id. § 16918. The information made available by each state registry is also available in a national registry. Id. § 16920.

The most dangerous category of offenders must register and verify their information in the registry for life, the middle category for 25 years, and the least dangerous category for 15 years. Id. § 16915(a). There is a provision for reducing the period of registration and verification for those either in the least dangerous category or who are required to register because of a juvenile delinquency adjudication, if they keep a clean record and complete an approved sex offender treatment program. Id. § 16915(b).

Failure to register as required by the Act is punishable by up to 10 years in prison. 18 U.S.C. § 2250(a). Congress charged the Attorney General with the responsibility of deciding if SORNA's registration requirements apply to sex offenders convicted before its passage, 42 U.S.C. § 16913(d), and he decided that they do. 28 C.F.R. § 72.3 (2007); see United States v. Dean, 604 F.3d 1275, 1282 (11th Cir. 2010) (rejecting a notice and comment challenge to the Attorney General's decision).

## III.

The Ex Post Facto Clause forbids Congress and the states from enacting "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."

6

Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981) (quotation marks omitted). The Supreme Court has held, however, that the ex post facto bar applies only to criminal laws, not to civil regulatory regimes. See Kansas v. Hendricks, 521 U.S. 346, 369, 117 S.Ct. 2072, 2085–86 (1997) (holding that a state's civil commitment statute was non-punitive, not a criminal proceeding, and thus did not implicate the Ex Post Facto Clause). In determining whether a legislative scheme is criminal or civil and non-punitive, the leading case is Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140 (2003).[3]

In Doe two men who were found guilty of sex offenses against minors claimed that Alaska's Sex Offender Registration Act had been unconstitutionally applied to them. Id. at 91, 123 S.Ct. at 1146. The men contended that it violated ex post facto principles to force them to register under a law that was enacted after they had committed their crimes and been released from prison.

[3]W.B.H. relies heavily on the Ninth Circuit's decision in United States v. Juvenile Male, 590 F.3d 924 (9th Cir. 2010). The Supreme Court, however, has vacated that decision and ordered the Ninth Circuit to dismiss the appeal in the case, United States v. Juvenile Male, 564 U.S.—, 131 S.Ct. 2860, 2865 (2011), which it has done, United States v. Juvenile Male, 653 F.3d 1081 (9th Cir. 2011). Even if we were in the Ninth Circuit, vacated decisions "have no legal effect whatever. They are void." United States v. Sigma Int'l, Inc., 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc). "We are free to give statements in a vacated opinion persuasive value if we think they deserve it." Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1218 (11th Cir. 2009). With that in mind, we have examined the Juvenile Male opinion carefully and do not find that it has any persuasive value.

Id. at 91, 123 S.Ct. at 1146.

The Alaska Act required offenders who had committed a single, non-aggravated sex offense to register and provide annual verification of information for 15 years.  Id. at 90, 123 S.Ct. at 1146.  Those who had committed multiple sex offenses or a single aggravated one were required to register for life and verify their information quarterly.  Id., 123 S.Ct. at 1146.  Registration included the sex offender's name, aliases, identifying features, address, place of employment, conviction information, and other data.  Id.,123 S.Ct. at 1146.  Much of that information was then made publicly available on the internet.  Id. at 91, 123 S.Ct. at 1146.  A sex offender was also required to notify his local police department if he changed his status, such as his residence.  Id. at 90, 123 S.Ct. at 1146.  Violators faced criminal penalties.  Id., 123 S.Ct. at 1146.

The issue in Doe was whether application of a sex offender registration and notification law to those who committed their offenses and completed their sentences of imprisonment before that law was enacted was "retroactive punishment forbidden by the Ex Post Facto Clause."  Id. at 92, 123 S.Ct. at 1146. The Supreme Court held that the Act did not violate the Ex Post Facto Clause because its primary purpose was not to impose punishment but instead to put in

8

place a civil and regulatory scheme.  Id. at 105–06, 123 S.Ct. at 1154.  In making that determination, the Court used a two-step analysis:

> If the intention of the legislature was to impose punishment, that ends the inquiry.  If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.

Id. at 92, 123 S.Ct. at 1147 (quotation marks omitted).

Regarding Doe's second step, the Court identified a number of "guideposts" to help determine whether a regulatory scheme's effects are so punitive that they negate its civil aims:

> The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

 Id. at 97, 123 S.Ct. at 1149.  Doe's second step is a steep one for those challenging a statute on these grounds.  "Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  Id. at 92, 123 S.Ct. at 1147 (citations and quotation marks omitted; emphasis added).

9

IV.

Following <u>Doe</u>, we first determine whether Congress intended SORNA to impose punishment or instead to put into place a civil regulatory scheme for keeping up with the location and movements of sex offenders. This is a question of statutory construction, <u>Doe</u>, 538 U.S. at 92, 123 S.Ct. at 1147, and in answering it we look at "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." <u>Id.</u> at 93, 123 S.Ct. at 1147 (quotation marks omitted). There are a number of considerations we take into account, such as the plain language of the statute, the legislative intent, and the manner of the statute's codification. <u>Id.</u> at 92–94, 123 S.Ct. at 1147–48. With SORNA all of those considerations point in the same direction—toward an intent to enact a civil regulatory system.

SORNA plainly states that its purpose is to protect society, particularly children, from sexual offenders, 42 U.S.C. § 16901, which is a non-punitive purpose. The statute is designed to keep law enforcement agencies informed about sex offenders in their jurisdiction and to provide the public with a means of informing itself about those offenders. That is a civil purpose.

The legislative history of SORNA supports the conclusion that its purpose

is civil and non-punitive. In the legislative history Congress noted that the earlier federal effort to create sex offender registries state-by-state had left gaps in the system, resulting in an estimated 100,000 unaccounted sex offenders. S. Rep. No. 109-369, at 16 (2006). With SORNA, Congress sought to fill those gaps and put in place a national sex offender registration system.

The manner in which SORNA was codified also indicates its civil nature. Most of its provisions are found in section 42 of the United States Code, the public health and welfare section. It is true that criminal penalties are provided for violating SORNA's requirements and that those penalties are contained in section 18 of the United States Code, which is the crimes and criminal procedure section. That is not dispositive, however, because civil regimes may impose criminal penalties for violations of their regulatory requirements. Doe, 538 U.S. at 95–96, 123 S.Ct. at 1148–49. As the Supreme Court said about the Alaska Act, "[t]he partial codification of the Act in the State's criminal procedure code is not sufficient to support a conclusion that the legislative intent was punitive." Id., 123 S.Ct. at 1148. The same is true of SORNA.

SORNA's statutory language, its legislative intent, and its place of codification all indicate that Congress' intent was to create a non-punitive

regulatory framework to keep track of sex offenders. The purpose was not to punish former sex offenders for their past crimes but to promote public safety by providing citizens with information about the whereabouts of sex offenders and assisting law enforcement in locating them.

SORNA closely resembles the Alaska Act that the Supreme Court in Doe held to be a civil regulatory scheme. That Alaska Act resulted from pre-SORNA federal legislation that conditioned federal law enforcement funds on a state's adoption of sex offender registration laws. Doe, 538 U.S. at 89, 123 S.Ct. at 1145. The only relevant difference between the operation of the two is that SORNA requires that initial registration, periodic verification, and notification of changes be done in person whereas the Alaska law required in-person initial registration but apparently did not require that notification of changes be made in person. See Doe, 538 U.S. at 101, 123 S.Ct. at 1151; Alaska Stat. § 12.63.010(b)–(c). That difference is not enough to change a statutory regime from civil and regulatory to criminal and punitive. The Supreme Court's conclusion in Doe that the legislative intent behind the Alaska Act was to create a civil regulatory scheme compels the same conclusion about SORNA. See Doe, 538 U.S. at 105, 123 S.Ct. at 1154. And we do so conclude. SORNA survives the first step of the Doe ex post facto analysis.

V.

We now turn to the second step of that analysis: applying the "guideposts," id. at 97, 123 S.Ct. at 1149, to determine whether SORNA is "so punitive either in purpose or effect as to negate" Congress' intention to make it a civil regulatory statute. Id. at 92, 123 S.Ct. at 1147 (quotation marks omitted); United States v. Ward, 448 U.S. 242, 249, 100 S.Ct. 2636, 2641 (1980). As we have mentioned, in making that determination, "[b]ecause we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Doe, 538 U.S. at 92, 123 S.Ct. at 1147 (citations and quotation marks omitted; emphasis added).

We take the Court at its word: some evidence will not do; substantial evidence will not do; and a preponderance of the evidence will not do. "[O]nly the clearest proof" will do. Id., 123 S.Ct. at 1147. The Doe Court noted that its "guideposts" were "neither exhaustive nor dispositive," id. at 97, 123 S.Ct. at 1149 (quotation marks omitted), but they were meant to guide our inquiry and we will consider each one of them.

A.

The first guidepost directs us to consider whether the regulatory regime has been regarded in our national history and traditions as punishment. Id., 123 S.Ct. at 1149. In Doe the Supreme Court held that adult sex offender registries do not resemble historical and traditional forms of punishment, such as public shaming. Id. at 98, 123 S.Ct. at 1150. Like Hester Prynne with her scarlet "A," those colonial chastisements required criminals to stand in public or bear brands displaying their crimes for "face-to-face" public shaming or subjected criminals to banishment. Id. at 98, 123 S.Ct. at 1150. The Court distinguished those colonial practices from sex offender registries that only disseminate information—"most of which," the Court noted, was already public. Id., 123 S.Ct. at 1150. The registries do not "stage[] a direct confrontation between the offender and the public." Id., 123 S.Ct. at 1150. An individual would need to seek out the information online, which the Court equated to visiting the criminal archives of a jurisdiction, and then embarrassment or humiliation would be only a "collateral consequence" of a legitimate government scheme. Id. at 99, 123 S.Ct. at 1150. With sex offender registries, "[t]he purpose and principal effect of notification are to inform the

14

public for its own safety, not to humiliate the offender." Id. at 99, 123 S.Ct. at 1150. The importance of that purpose and the legitimacy of that effect are established by the high recidivism rates of those who commit sex offenses against children. See United States v. Irey, 612 F.3d 1160, 1214–15 (11th Cir. 2010) (en banc).

SORNA does not subject sex offenders to "face-to-face" public shaming or banishment to any greater degree than the Alaska statute in Doe did. Sex offenders are not forced to stand in pillories in the middle of town to face a barrage of bad-mouthing from the town's browbeaters and blowhards. SORNA websites warn their users that the information may not be used for illegal or improper purposes, such as harassment, and those who misuse the information are subject to civil or criminal penalties. 42 U.S.C. § 16918(f).

W.B.H. attempts to distinguish Doe, arguing that records involving criminal offenses committed by Alabama youthful offenders are not made public, so disseminating information about them must be punitive. The only things wrong with that syllogism are its factual premise and its legal premise. As for the factual premise, an Alabama court in its discretion may permit the inspection of records

15

relating to a youthful offender conviction, Ala. Code § 15-19-7(b), and if the same

offender is later convicted of another crime, the youthful offender conviction

"shall be considered," id. § 15-19-7(a).[4]

As for the legal premise of W.B.H.'s argument, the Supreme Court held in

Doe that "[o]ur system does not treat dissemination of truthful information in

furtherance of a legitimate governmental objective as punishment." Doe, 538 U.S.

at 98, 123 S.Ct. at 1150. Even if the fact that a person had been convicted of a sex

offense as a youthful offender were to be permanently sealed under state law,

dissemination of that truthful information in a SORNA registry would be "in

furtherance of a legitimate governmental objective." See id., 123 S.Ct. at 1150.

Under Doe disseminating that truthful information would not be considered

punishment, and it would be permitted. Any embarrassment or scorn resulting

from dissemination of the truthful information about W.B.H.'s youthful offender

conviction is a collateral consequence of a legitimate regulation. See id. at 99, 123

S.Ct. at 1150.

---

[4]As noted earlier, the district court did seal the record of W.B.H.'s federal narcotics conviction and his sentencing record in this case, but it was not because of any concerns about publicizing his earlier youthful offender conviction. Instead, it was solely to protect him from reprisals because of his cooperation with federal law enforcement in the drug case.

For these reasons, the first Doe guidepost points toward SORNA not being "so punitive either in purpose or effect as to negate" Congress' intention to make it a civil regulatory statute. Id. at 92, 123 S.Ct. at 1147 (quotation marks omitted); Ward, 448 U.S. at 249, 100 S.Ct. at 2641.

B.

The second Doe guidepost directs us to analyze whether a regulatory scheme imposes on those it regulates an "affirmative disability or restraint." The Supreme Court noted that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." Doe, 538 U.S. at 100, 123 S.Ct. at 1151. The Alaska statute in Doe "impose[d] no physical restraint, and so [did] not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." Id., 123 S.Ct. at 1151. That statute did not prohibit sex offenders from changing residences or jobs. Id., 123 S.Ct. at 1151. It did, of course, impose notification requirements: "Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so." Id. at 101–02, 123 S.Ct. at 1152. Those notification requirements, unlike the restraints

17

imposed on those who are on probation or supervised release, are not conditions of release the violation of which could result in revocation and imposition of imprisonment without new criminal charges and another trial. See id., 123 S.Ct. at 1152. Considering this aspect of the Alaska registration statute, the Court concluded that "[i]t suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause." Id. at 102, 123 S.Ct. at 1152.

SORNA involves the same type of indirect disabilities or restraints as the Alaska statute in Doe. Offenders who register under SORNA are not subject to any physical restraints. They may change residences, jobs, and student status without prior approval. See 42 U.S.C. § 16913(c) (requiring only notification of these changes to law enforcement). Like the Alaska statute, SORNA does not prohibit changes, it only requires that changes be reported.

It is true that the Alaska registry apparently did not require sex offenders to update their registration information in person, Doe, 538 U.S. at 101, 123 S.Ct. at 1151, while SORNA requires the most dangerous category of sex offenders, which includes W.B.H. with his rape conviction, to verify in person every three months,

see 42 U.S.C. § 16916(3), and to make in-person notifications within three days after changing their name, residence, employment, or student status. Id. § 16913(c). The in-person requirements help law enforcement track sex offenders and ensure that the information provided is accurate. See United States v. Powers, 562 F.3d 1342, 1344 (11th Cir. 2009) ("[T]he requirement that sex offenders register under § 16913 is necessary to track those offenders who move from jurisdiction to jurisdiction." (quotation marks omitted)). Appearing in person may be more inconvenient, but requiring it is not punitive.

The Supreme Court in Doe recognized that requiring sex offenders to register could make it more difficult for them to obtain housing or employment, but the Court rejected the idea that those difficulties were due primarily to registration. "Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." Id. at 101, 123 S.Ct. at 1151. Landlords and employers conducting background checks could discover sex offense convictions even without a registry. Id. at 100, 123 S.Ct. at 1151. For

those reasons, the Court found Alaska's registry to impose only a minor and indirect disability or restraint on adult sex offenders.  See id. at 102, 123 S.Ct. at 1152.[5]

W.B.H. argues that SORNA imposes affirmative disabilities or restraints on those who were convicted of sex offenses under the Alabama Youthful Offender Act because it deprives them of the benefits of that statute.  The benefits of youthful offender treatment are many and include a bar against use of incriminating statements or confessions in determining guilt, Ala. Code § 15-19-5, a maximum sentence of three years regardless of the crime, id. § 15-19-6(a)(4), and more lenient sentencing in general (as evidenced by the fact that W.B.H. received three years probation for rape), see id. § 15-19-6(a)(3).  None of those benefits is affected by SORNA.  The only youthful offender benefit that is affected by SORNA's registration requirements is any remaining confidentiality concerning the crime and conviction, but the disclosure of that information is not enough to make registration punitive.  See supra p. 16.

_____

[5]W.B.H. argues that Doe is distinguishable, at least insofar as to those with Alabama youthful offender convictions are concerned, because those convictions, unlike adult convictions, are not a matter of public record.  We have already explained why this argument is not persuasive.  See supra pp. 15–16.

For these reasons, the second Doe guidepost, like the first one, points toward the conclusion that SORNA is not "so punitive either in purpose or effect" to override Congress' intent that it be a civil regulatory statute. Doe, 538 U.S. at 92, 123 S.Ct. at 1147 (quotation marks omitted); Ward, 448 U.S. at 249, 100 S.Ct. at 2641.

## C.

The third Doe guidepost directs us to consider whether SORNA promotes the traditional aims of punishment. See Doe, 538 U.S. at 97, 123 S.Ct. at 1149. The Supreme Court has defined those aims as "'retribution and deterrence,'" see, e.g., Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 493 (1997), and in Doe the Court analyzed both in relation to the Alaska registration requirement, see 538 U.S. at 102, 123 S.Ct. at 1152. It reasoned that even if the Alaska statute did have a deterrent effect, that alone would not make the registration requirement punitive. Id., 123 S.Ct. at 1152. As the Court explained, "hold[ing] that the mere presence of a deterrent purpose renders such sanctions criminal . . . would severely undermine the Government's ability to engage in effective regulation." Id., 123 S.Ct. at 1152 (quotation marks omitted). The Court also found that Alaska's

registry requirements were not retributive, even though they increased with the severity of the offender's prior conviction." Id., 123 S.Ct. at 1152. That aspect of it, and the regulatory regime as a whole, was "reasonably related to the danger of recidivism" and "consistent with the regulatory objective." Id., 123 S.Ct. at 1152.

Like the Alaska statute in Doe, SORNA's regulatory regime is reasonably related to the danger of recidivism posed by sex offenders. As to youthful offenders in particular, the registration requirements apply only to those who commit the most serious sex crimes and only if the offender was at least 14 years old at the time he committed the crime. See 42 U.S.C. § 16911(8). SORNA's regulatory regime allows the public and law enforcement to determine the general whereabouts of convicted sex offenders, but it does not directly restrict their mobility, their employment, or how they spend their time.

W.B.H. argues that SORNA seeks to "revisit past crimes." He quotes, from the purpose section of the Act, language stating that it was enacted "in response to the vicious attacks by violent predators against" children and adults, id. § 16901. But that hardly amounts to "revisit[ing] past crimes," and even if it did, all sex offender registration statutes do so in the same sense—a conviction for a past

crime is a predicate for registration. If that were improperly retributive, the Doe decision would have come out differently.

If SORNA has any deterrent effect, or purpose, that is not enough to justify a finding that the Act's purpose is punitive. See Doe, 538 U.S. at 102, 123 S.Ct. at 1152. Regarding the traditional aims of punishment, SORNA is no different from the Alaska registration statute upheld in Doe. The third guidepost points in favor of concluding that SORNA is a civil measure not a punitive one.

D.

The fourth Doe guidepost directs us to consider whether SORNA has a rational relationship to a non-punitive purpose. Id., 123 S.Ct. at 1152. This, according to the Supreme Court, is the "most significant" factor in determining whether a sex offender registration system is non-punitive. Id., 123 S.Ct. at 1152 (quotation marks and alteration omitted). The Court noted in Doe that a "close or perfect fit" between the statute and its non-punitive aims is not required. Id. at 103, 123 S.Ct. at 1152. And the Court recognized that the Alaska sex offender registry had the legitimate non-punitive purpose of promoting public safety "by alerting the public to the risk of sex offenders in their communit[y]." Id., 123

23

S.Ct. at 1152 (quotation marks omitted).

The same, of course, is true of SORNA. Its registration requirements have a rational relationship to promoting public safety in the same way that those involved in Doe did. This "most significant" factor weighs in favor of a determination that SORNA is non-punitive.

E.

The final Doe guidepost directs us to consider whether the regulatory scheme is excessive with respect to its non-punitive purpose. Id. at 97, 123 S.Ct. at 1149. The Supreme Court has instructed us that: "The excessiveness inquiry of our ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." Id. at 105, 123 S.Ct. at 1154.

The Court held in Doe that the registration requirements of the Alaska statute were reasonable in light of its non-punitive objective. Id., 123 S.Ct. at 1154. In doing so, the Court recognized the state's authority to make rules of universal application, treating "convicted sex offenders as a class, rather than

requir[ing] individual determination of their dangerousness." Id. at 104, 123 S.Ct. at 1153. That means that "[i]n the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the Ex Post Facto Clause." Id., 123 S.Ct. at 1153. Such a categorical approach is reasonable in light of the "high rate of recidivism among convicted sex offenders and their dangerousness as a class." Id. at 103, 123 S.Ct. at 1153. Finally, the Court found unpersuasive arguments that the Alaska law was excessive because of its reporting requirements (for life, in some instances) and the registry's wide dissemination (to the world via the internet). Id. at 104–05, 123 S.Ct. at 1153.

The fit between SORNA's regulatory purpose and the means used to achieve it is not materially different from that of the Alaska statute in Doe. Both statutes require registration and mandate dissemination on the internet of information regarding the whereabouts of convicted sex offenders, with the reporting requirements dependent on the category of dangerousness. Both statutory regimes group the offenders in categories instead of making individual

25

determinations of dangerousness. Because <u>Doe</u> held that the regulatory scheme of the Alaska statute is not excessive in relation to its non-punitive purpose, it necessarily follows that SORNA's is not either.

W.B.H. tries to distinguish Doe's holding on the excessiveness question based on the fact that he was convicted as a youthful offender when he was eighteen years old. He argues that those who commit sex offenses when they are young have a lower rate of recidivism than those who do so as adults, and as a result, a long-term registry requirement for former juvenile offenders is unnecessary to protect the community. But when it comes to answering the excessiveness question, the Supreme Court has warned against "determining whether the legislature has made the best choice possible," id. at 105, 123 S.Ct. at 1154, which is what W.B.H.'s argument would require. Besides, a lower rate of recidivism is not the same thing as no recidivism. Even if those who commit sex crimes as adults do have a higher recidivism rate, that does not mean registration requirements covering younger sex offenders are excessive.

W.B.H. also argues that SORNA's registration requirements are excessive because they will lead to youthful offenders being ostracized for crimes that may

have been the result of their undeveloped, adolescent nature. We are not convinced that rape is a crime that results from an undeveloped, adolescent nature. Nor are we convinced that any collateral effects, such as ostracism of youthful rapists, when considered in light of the intended public safety benefits, make the regulatory scheme excessive in light of its non-punitive purpose.

VI.

For the reasons we have discussed, when it enacted SORNA Congress did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a civil and non-punitive regulatory scheme. Given that intent, the question under the Doe decision is whether there is "the clearest proof" that SORNA is so punitive in effect, as applied to those convicted of sex offenses under the Alabama Youthful Offender Act, as to negate the intention that it be a civil regulatory statute. See id. at 92, 123 S.Ct. at 1147; Ward, 448 U.S. at 249, 100 S.Ct. at 2641. That "clearest proof" is lacking, as our application of the Doe guideposts, see Doe, 538 U.S. at 97–106, 123 S.Ct. at 1149–54, makes clear. Therefore, we reject W.B.H.'s ex post facto attack on SORNA's application to him.

**AFFIRMED**.