[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11279
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-02959-VEH

JIM WINDWALKER,

Plaintiff - Appellant,

versus

GOVERNOR OF ALABAMA,
ATTORNEY GENERAL, STATE OF ALABAMA,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 2, 2014)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Jim Windwalker appeals from the district court's dismissal of his

amended complaint challenging the Alabama Sex Offender Registration and

Community Notification Act ("ASORCNA"), Ala. Code §§15-20A-1 et seq.

Windwalker was convicted in Florida in 1985 for having oral sex with a child under 12. Windwalker later moved to Clay County, Alabama, and because of his Florida conviction, was required to register as a sex offender under ASORCNA. In 2012, he challenged its constitutionality in this lawsuit, which the district court dismissed for failure to state a claim. On appeal, Windwalker argues that the district court erred in concluding that ASORCNA does not violate: (1) the Ex Post Facto Clause; (2) due process; (3) equal protection; and (4) the free exercise of religion. He also argues that he was entitled to an opportunity to amend his complaint. After careful review, we affirm.

We review de novo the grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

First, we are unpersuaded by Windwalker's argument that ASORCNA violates the Ex Post Facto Clause. As a general rule, a law may constitute an ex

2

post facto violation if it is intended to impose a retroactive punishment or if it has the effect of transforming an otherwise civil remedy into a criminal penalty. Smith v. Doe, 538 U.S. 84, 92 (2003). To make this determination, the Supreme Court says that we first must look to the statutory text and structure to determine whether the legislature "either expressly or impliedly [indicated] a preference for one label or the other." Id. at 93 (quotation omitted). "If the intention of the legislature was to impose punishment, that ends the inquiry." Id. at 92. "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." Id. (quotation omitted).

The second step -- the "effects" analysis -- involves consideration of the factors set out in Kennedy v. Mendoza-Martinez, which include whether, in its necessary operation, a regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; requires a finding of scienter; applies to behavior that is already a crime; promotes traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose. 372 U.S. 144, 168-69 (1963). "Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Smith, 538 U.S. at 92 (quotation and citation

3

omitted; emphasis added).  In <u>Smith</u>, the Supreme Court addressed whether "a sex offender registration and notification law constitute[d] retroactive punishment forbidden by the Ex Post Facto Clause," and concluded "that respondents [did not] show, much less by the clearest proof, that the effects of the law negate[d] Alaska's intention to establish a civil regulatory scheme."  <u>Id.</u> at 91, 105.

Here, the stated purpose of ASORCNA is to regulate sex offenders for the sake of public safety.  <u>See</u> Ala. Code §15-20A-2(5) (declaring its intent "not to punish sex offenders but to protect the public and, most importantly, promote child safety.").  The act has three main parts: (1) quarterly in-person registration with law enforcement to provide personal information, and, in case of travel for more than three days, information for a travel permit; (2) community notification about sex offenders' identity and location, and a sex offender designation on drivers' licenses; and (3) restrictions on sex offenders' proximity to vulnerable potential victims.  Having reviewed the statute, we conclude that Windwalker has not offered the necessary "clearest proof" to override the legislature's intent that the act be nonpunitive and transform it into a criminal penalty.  Indeed, of the several factors to consider, many cut against Windwalker, and we need only mention three -- affirmative disability or restraint, rational connection, and excessiveness.

As for whether ASORCNA imposes an affirmative disability or restraint, this factor does not tip the balance in favor of Windwalker.  In analyzing this issue,

4

we must keep in mind that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." Smith, 538 U.S. at 100.   As a result, we've found no punitive restraining effect even where the federal Sex Offender Registration and Notification Act ("SORNA") required in-person reporting and mandated dissemination on the internet of information regarding the whereabouts of convicted sex offenders.  See United States v. W.B.H., 664 F.3d 848, 857 (11th Cir. 2011).  We said that "[a]ppearing in person may be more inconvenient, but requiring it is not punitive."  Id. We also recognized that "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record."  Id. (quoting Smith, 538 U.S. at 101).  To the extent ASORCNA imposes additional burdens, we still fail to find it punitive.

As for rational connection, we remain unconvinced.  Whether the regulatory scheme has a "rational connection to a nonpunitive purpose" is the most "significant" factor in the ex post facto analysis.  Smith, 538 U.S. at 102. Nevertheless, the requirement of a "rational connection" is not demanding: A "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."  Id.  Thus, in W.B.H., we disposed of this factor quickly:  SORNA's "registration requirements have a rational

5

relationship to promoting public safety in the same way that those involved in [Smith] did." 664 F.3d at 859. We reach the same result for ASORCNA.

Lastly, as for excessiveness, the Supreme Court has already permitted sex offenders to be regulated as a class regardless of individualized risk assessments:

> The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. . . . . Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application.

Smith, 538 U.S. at 103-04 (quotation and citation omitted). Citing sex-offender recidivism studies, the Supreme Court specifically approved a state's conclusion "that a conviction for a sex offense provides evidence of substantial risk of recidivism." Id. at 103. What's more, Smith acknowledges that "[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release, but may occur as late as 20 years following release." Id. at 104 (quoting National Institute of Justice, R. Prentky, R. Knight, & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997)).

We also rejected a similar claim in W.H.B. -- that SORNA was excessive because he was convicted as a youthful offender at age eighteen, and, according to W.B.H, those who are young when they commit sex offenses have a lower rate of recidivism than those who do so as adults. 664 F.3d at 860. We said that "when it

comes to answering the excessiveness question, the Supreme Court has warned against 'determining whether the legislature has made the best choice possible.'" Id. (citing Smith, 538 U.S. at 105).  So too here -- if those who claim a lower rate of recidivism cannot claim excessiveness, then neither can Windwalker.  In short, Windwalker has failed to show us that ASORCNA is "so punitive either in purpose or effect" that it has overridden the legislature's stated intent that it be a civil regulatory statute.  Smith, 538 U.S. at 92 (quotation marks omitted).  As a result, the district court did not err in dismissing his ex post facto claim.

Windwalker's substantive due process claim fails as well.  We analyze a substantive due process claim by first crafting a "careful description of the asserted right."  Doe v. Moore, 410 F.3d 1337, 1343 (11th Cir. 2005) (quotation omitted). Second, we determine whether the asserted right is "one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  Id. (quotation omitted).

Windwalker says that ASORCNA violates several of his fundamental rights: "e.g., his right to privacy, his right to find and retain housing, his right to find and keep employment, his right to free travel and movement, his right to be free from interference in his religious practices, and his right to be free of threats and harassment."  However, in Doe, we held that "[t]hough the Supreme Court has not

7

addressed whether substantive due process invalidates sex offender registration statutes, we can find no history or tradition that would elevate the issue here to a fundamental right." Id. at 1345 (citation omitted); see also id. at 1344 ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld such registration and publication requirements finding no constitutional infirmities."). Indeed, when "carefully described" in the context of a regulation designed to protect the public from sex offender recidivism, none of Windwalker's asserted rights are so "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Id. at 1344 (quotation omitted). This reasoning applies notwithstanding differences between the sex-offender statute at issue in Doe and the one at issue here. Thus, the district court did not err in dismissing the substantive due process claim.

We also reject Windwalker's equal protection claim. As we explained in Doe, where the appellants "argue[d] that the Sex Offender Act impermissibly treat[ed] sex offenders differently from other felony offenders," "[s]ince sex offenders are not considered a suspect class in general, and the various sub-classifications presented by the Appellants do not implicate a suspect class, we review those classifications under a rational basis test asking whether they are rationally related to a legitimate governmental purpose." Id. at 1346 (citations and

quotations omitted).  Because Windwalker has not presented any classifications or subclassifications under the ASORCNA that would trigger heightened equal protection scrutiny, consistent with Doe, ASORCNA is subject to the rational-basis test.[1]  Further, under this test, where a statute is constitutionally sufficient "when there is any reasonably conceivable state of facts that could provide a rational basis for it," id. (quotations omitted), Windwalker cannot state a rational-basis equal protection claim, especially given ASORCNA's expressly incorporated legislative findings articulating several reasonable bases for enacting the law, see Ala. Code § 15-20A-2(1)-(5).

Finally, we find no merit to his free exercise claim. While his complaint does not clarify how the ASORCNA might burden his exercise of religious freedom, regardless, Windwalker cannot plausibly state a Free Exercise Clause claim.  In particular, the Supreme Court has made it clear that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C., 132 S. Ct. 694, 706 (2012) (quotation omitted).  Moreover, nothing contained in the ASORCNA relates to a

---

[1] Moreover, to the extent Windwalker argues that strict scrutiny is appropriate because he "has alleged violations of his fundamental rights," we've already concluded that no fundamental rights are involved here, and thus, strict scrutiny does not apply.

9

person's religious practice except in a single provision permitting sex offenders to change their name for religious reasons. See Ala. Code § 15-20A-36(a) ("No sex offender shall change his or her name unless the change is incident to a change in the marital status of the sex offender or is necessary to effect the exercise of the religion of the sex offender.").

A court should give leave to amend freely "when justice so requires." Fed.R.Civ.P. 15(a). We've said that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice," unless the plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim. Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir.1991), overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir.2002) (en banc). Here, however, Windwalker knew how to ask to amend his complaint. He had already done so once, and the district court instructed him on how to do it and then accepted his amended complaint. But in any event, we fail to see how a more carefully drafted complaint might state a claim in this case. Accordingly, the district court did not err in dismissing the case with prejudice.

**AFFIRMED.**

10