BOLIN, Justice.
The State petitions this Court for a writ of mandamus directing the Jefferson Circuit Court to set aside its order relieving Michael Scott Biddle from the residency requirements of the Alabama Sex Offender Registration and Community Notification Act, § 15-20A-1 et seq., Ala.Code 1975 (“the ASORCNA”), on the basis’ that the circuit court lacked jurisdiction over the case. The State also filed an appeal seeking alternative relief in the event this Court concludes that the circuit court had jurisdiction over the matter. We grant the petition and dismiss the appeal.
On April 13, 1993, Biddle was convicted in South. Carolina of a lewd act upon a child, a violation of S.C.Code § 16-15-140. He was sentenced to 10 years’ imprisonment; his sentence was suspended and he was ordered to serve 5 years on probation. Biddle moved to Alabama in January 2014! Under § 15-20A-10 of the ASORCNA, Biddle’s conviction requires that he register as a sex offender. Biddle’s conviction also subjects him to the residency restrictions set out in § 15-20A-11' of the ASORCNA. Section 15-20A-11 provides, in pertinent part, that no registered sex offender may reside within 2,000 feet of a school or a child-care facility.
On January 22, 2014, Biddle registered with the Jefferson County Sheriffs Department as a sex offender in compliance with. § 15-20A-10(a)(l) of the ASORCNA. On February 25, 2014, Biddle filed a form averring that he. was residing at an address in Jefferson County that was not within 2,000 feet of a school or a child-care facility. On May 23, 2014, Biddle was indicted for two counts of violating the. residency requirements of § 15-20A-11.
On August 28, 2014, following a bench trial, Biddle was found not guilty on both counts. That same day and in the same proceeding, Biddle filed, in the criminal division of the Jefferson Circuit Court, a petition pursuant to § 15-20A-23, which provides .that a registered sex offender may be relieved of thb residency’ restrictions of the ASORCNA if the sex offender is “terminally ill or permanently immobile.” Biddle alleged in his petition that he was terminally ill, that he needed a full-time caregiver, and ‘that his sister lived in Vestavia Hills and would care for him if he resided with her.
It should be noted that Biddle had no criminal charges against him when he filed his petition in the criminal division of the circuit court seeking relief from the residency requirements of the ASORCNA. Biddle did not pay a filing fee to the circuit court for filing his petition, and he did not file the petition as a new civil case. The State .filed an objection, challenging the circuit court’s jurisdiction and asserting that Biddle’s petition was incomplete because he had not paid a filing fee or sought in forma pauperis status.
On September 22, 2014, the circuit court granted Biddle’s petition for relief from the residency restrictions of the ASORC-NA.[1] The State filed a petition for a writ *1124 of mandamus, challenging the circuit court’s jurisdiction over the matter and an appeal seeking alternative relief if this Court determined that the circuit court had jurisdiction. Because of our disposition of the petition for the writ of mandamus, we dismiss the appeal. This Court granted the State’s motion for a stay of the circuit court’s order granting Biddle relief from the residency requirements of the ASORCNA pending our resolution of Biddle’s petition.

Standard of Review

“‘The writ of mandamus is a drastic and extraordinary writ, to be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).’ Ex parte Carter, 807 So.2d 534 at 536 [ (Ala.2001) ].”
Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001).
“The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003). See also Ex parte Holley, 883 So.2d 266, 268 (Ala.Crim.App.2003) (“[The petitioner’s] only remedy is to file a mandamus petition. [The petitioner] could not appeal the ruling entered by [the circuit judge] because that ruling was ‘void,’ and a void judgment will not support an appeal.”).

Discussion

The issue is whether the circuit court had jurisdiction over Biddle’s petition, which turns on whether the proceeding was civil or criminal in nature. It is undisputed that no criminal charges were pending against Biddle when he filed his petition in the criminal division of the circuit court and that Biddle did not pay a filing fee or seek in forma pauperis status before filing his petition.
We note that since 1996 Alabama has had statutory provisions requiring that sex offenders register with law enforcement. See § 15-20-20 through -24 (now repealed). In 2011, the legislature adopted the ASORCNA.[2] Although this Court has not been called on to interpret the ASORCNA, we have guidance from other courts that have considered similar sex-offender-registration statutes and whether proceedings under those statutes are criminal or civil in nature.
In Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the United States Supreme Court addressed an ex post facto challenge to the Alaska Sex Offender Registration Act, an act similar to the ASORCNA in its registration and residency requirements, brought by indi-, viduals who were convicted of sex offenses before the passage of the Alaska act. Specifically, the Supreme Court “considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause.” 538 U.S. at 92. The Court *1125 determined that “[t]he [Alaska] Act is non-punitive, and its retroactive application does not violate the Ex Post Facto Clause.” 538 U.S. at 105-06.
.The Smith Court stated:
“This is the first time we have considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause. The framework for our inquiry however, is well established. We must ‘ascertain whether the legislature meant the statute to establish “civil” proceedings.’ Kansas v. Hendricks, 521 U.S. 346, 361 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, we must further examine whether the statutory scheme is “‘so punitive either in purpose or effect as to negate [the State’s] intention” to deem it “civil.” ’ Ibid, (quoting United States v. Ward, 448 U.S. 242, 248-249 (1980)). Because we ‘ordinarily defer to the legislature’s stated intent,’ Hendricks, supra, at 361, ‘“only the.clearest proof’ will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,’ Hudson v. United States, 522 U.S. 93, 100 (1997)(quoting Ward, supra, at 249); see also Hendricks, supra, at 361; United States v. Ursery, 518 U.S. 267, 290 (1996); United States v. One Assortment of 89 Firearms, 465 U.S. 354, 365 (1984).”
538 U.S. at 92. The Smith Court stated: “The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.”- 538 U.S. at 97.
The Court of Criminal Appeals in Lee v. State, 895 So.2d 1038 (Ala.Crim.App.2004), relied heavily on Smith v. Doe, supra, to conclude that the now repealed Community Notification Act (“the CNA”), § 15-20-20 et seq., Ala.Code 1975, was not an ex post facto law, either facially or as applied to the appellant in that case, who was an adult criminal sex offender. The court held that the CNA was intended to create a civil regulatory scheme and that it did not have, any punitive effect on the appellant that negated the legislative intent behind the CNA. 895 So.2d at 1042-43. See also Boyd v. State, 960 So.2d 717 (Ala. Crim.App.2006) (reaffirming Lee v. State, supra). The Court of Civil Appeals in Salter v. State, 971 So.2d 31 (Ala.Civ.App. 2007), held that the CNA propounded a civil ■ scheme with the recognized goal of protecting communities and their most vulnerable citizens — children—from the proven danger of recidivism by criminal sex offenders. The Court of Civil Appeals, relying on Lee v. State, held that the CNA could not be considered a punitive statute in either intention or effect with regard to the defendant.
In Windwalker v. Bentley, 925 F.Supp.2d 1265 (N.D.Ala.2013), Jim Wind-walker was a sexual offender who was subject to the requirements of the ASORCNA. He challenged the ASORC-NA on several grounds, including an argument that it was an ex post facto law. The United States District Court for the Northern District-of Alabama stated:
“Mr. Windwalker’s efforts to challenge the ASORCNA on an ex post facto basis are similarly unavailing in light of *1126 the Supreme Court’s guidance in Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). As a general rule, a law. may constitute an ex post facto viola- • tion if it is intended to impose aretroac- ■ Uve punishment or, if it has the effect of transforming ‘a[n] otherwise civil remedy’ into ‘a criminal penalty.’ Id. at 92, 123 S.Ct. at 1146-47 (quoting Hudson v. United States, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)).
[[Image here]]
“Here, the stated purpose of the ■ASORCNA is undoubtedly civil in nature and Mr. Windwalker has not alleged any facts that would support an ex ■' post facto effects claim consistent with Smith. See id. at 97, 123 S.Ct. at 1149 (‘The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.’). Thus, from a pleadings standpoint, Mr. Windwalker’s ex post facto claim fails.”
925 F.Supp.2d at 1269, (emphasis added). See also Spencer v. Bentley (No. 7:12-CV-01832-AKK-SGC, February 24, 2015) (N.D.Ala,2015) (not published in F.Supp.3d) (“First, a review of ASORCNA shows no provision for a traditional form of punishment. Second, ASORCNA does not subject sex offenders to an affirmative disability or restraint. Any disability suffered by a sex offender is the result of the initial crime, not the registration requirement. By its terms, the law does not prohibit a sex offender from changing his residence; it requires a sex offender only to notify law enforcement of a change of residence, which new residence must comply with the requirements of ASORCNA. Third, ASORCNA does not impose any additional punishment on a sex offender. While failure to comply with the reporting requirements could result in another arrest and criminal prosecution — as in Plaintiffs case — that prosecution would be for a new offense, not the original one. Fourth, ASORCNA has a rational connection to the legitimate, non-punitive purpose of public safety, which is advanced by enabling law enforcement officials to maintain closer contact with sex offenders and alerting the public to- the risk posed by a sex offender in their community. Fifth, the regulatory scheme is not excessive with respect to the purpose of ASORCNA. In Smith v. Doe[, 538 U.S. 84 (2003),] the Supreme Court noted the question is not whether the legislature made the best choice possible to address the problem it seeks to remedy but whether the regulatory means chosen are reasonable in light of the non-punitivé objective. Smith v. Doe, 538 U.S. at 105 (emphasis added).”); and McGuire v. Strange, 83 F.Supp.3d 1231 (M.D.Ala.2015)(holding that the ASORC-NA, as a whole, was not so punitive in purpose or effect as to negate the Alabama Legislature’s stated nonpunitive intent but that two provisions regarding homeless sexual offenders and sexual offenders seeking travel permits, provisions not at issue here, should be severed from the ASORCNA).
In United States v. W.B.H., 664 F.3d 848 (11th Cir.2011), ‘the United States Court of Appeals for the Eleventh Circuit, relying upon Smith, upheld the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 et seq. (“SOR-NA”), over an Ex Post Facto Clause challenge: .
“The fit between SORNA’s regulatory purpose and the means used to achieve it is not materially different from that of the Alaska statute in [Smith v. ]Doe [, 538 U.S. 84 (2003) ]. Both statutes require registration and mandate dissemi *1127 nation on the internet of information regarding the whereabouts of convicted sex offenders, with the reporting requirements dependent on the category of dangerousness. Both statutory regimes group the offenders in categories instead of making individual determinations of dangerousness. Because Doe held that the regulatory scheme of the Alaska, statute is not excessive in relation to its non-punitive purpose, it necessarily follows that SORNA’s is not either.
u
“For the reasons we have discussed, when it enacted SORNA Congress did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a civil and non-punitive regulatory scheme. Given that intent, the question under the Doe decision is whether there is ‘the clearest proof that SORNA is so punitive in effect, as applied to those convicted of sex offenses under the Alabama Youthful Offender Act, as to negate the intention that it be a civil regulatory statute. See id. at 92, 123 S.Ct. at 1147; [United States v.] Ward, 448 U.S. [242] at 249, 100 S.Ct. [2636] at 2641 [65 L.Ed.2d 742 (1980) ]. That ‘clearest proof is lacking, as our application of the Doe guideposts, see Doe, 538 U.S. at 97-106, 123 S.Ct. at 1149-54, makes clear.”
664 F.3d at 859-60 (emphasis added).
The legislature set out its findings and the purpose of the ASORCNA in § 15-20A-2:
“(1) Registration and notification laws are a vital concern as the number of sex offenders continues to rise. The increasing numbers coupled with the danger of recidivism place society at risk. Registration and notification laws strive to reduce these dangers by increasing public safety and mandating the release of certain information to the public. This release of information creates better awareness and informs the public of the presence of sex offenders in the community, thereby enabling the public to take action to protect themselves. Registration and notification laws aid in public awareness and not only protect the community but serve to deter sex offenders from future crimes through frequent in-person registration. Frequent in-person registration maintains constant contact between sex offenders and law enforcement, providing law enforcement with priceless tools to aid them in their investigations including obtaining information for identifying, monitoring, and tracking sex offenders.

(Í

“(5) Sex offenders, due to the nature of their offenses, have a reduced expectation of privacy. In balancing the sex offender’s rights, and the interest of public safety, the Legislature finds that releasing certain information to the public furthers the primary governmental interest of protecting vulnerable populations, particularly children. Employment and residence restrictions, together with monitoring and tracking, also further that interest. The Legislature declares that its intent in imposing certain registration, notification, monitoring, and tracking requirements on sex offenders is not to punish sex offenders but to protect the public and, most importantly, promote child safety.”
We note too that the legislature has-amended the ASORCNA effective September 2015 to expressly state that petitions for relief from residency restrictions are civil in nature. “. When statutes are amended or replaced by succeeding legislation, the Legislature often seeks to clarify previously ambiguous provisions. These subsequent acts by the Legislature must be considered in trying to determine the intent of the • legislation. 73 . Am. Jur.2d, Statutes, § -178.’ . McWhorter v. *1128 State Bd. of Registration for Prof'l Eng’rs & Land Surveyors, 359 So.2d 769, 773 (Ala.1978).” T-Mobile South, LLC v. Bonet, 85 So.3d 963, 979 (Ala.2011). •
Here, Biddle had nothing pending in the criminal' division of the circuit court when he filed his petition seeking relief from the residency requirements of the ASORCNA. The ASORCNA is a civil regulatory act that requires sex offenders to register with local law enforcement in' order to make local law enforcement aware that a convicted sex offender is residing in the area. The notification portion of the ASORCNA provides for dissemination of that information to the public to make the community aware of the presence of a potential danger, and the residency restrictions protect our most -vulnerable citizens — children— from predators residing in the area.
Section 12-19-70, Ala.Code 1975, provides:
“(a) There shall be a consolidated civil filing fee, known as a docket fee, collected from a plaintiff at the time a complaint is filed in circuit court or in district court.
“(b) The docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship. A verified statement of substantial hardship, signed by the plaintiff and approved by the court, shall be filed with the clerk of court.”
In Ex parte Courtyard Citiflats, LLC, [Ms. 1140264, June 12, 2015] — So.3d - , - (Ala.2015), this Court reaffirmed the following principle:
“‘The use of the term “shall” in [§ 12-19-70] makes the payment of the filing fee mandatory. See Prince v. Hunter, 388 So.2d 546, 547 (Ala. 1980). It was the obvious intent of the legislature to require that either the payment of this fee or a court-approved verified statement of substantial hardship accompany the complaint at the time of filing.’
“[De-Gas, Inc. v. Midland Resources,] 470 So.2d [1218] at 1220 [(Ala. 1985)]....”
(Emphasis omitted.)
In conclusion, the State has a clear legal right to the relief sought because the circuit court, sitting in a completed criminal case, lacked jurisdiction to relieve Biddle from the residency requirements of the ASORCNA in what should have been a civil proceeding. Biddle should have filed a “new” civil action in order to seek relief from the residency requirements of the ASORCNA.
1131496 — PETITION GRANTED; WRIT ISSUED.
1140603 — APPEAL DISMISSED.
MOORE,-CJ., and STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.

. It was, undisputed that Biddle’s sister’s house is located within 2,000 feet of a childcare facility. Biddle presented medical records indicating that he had a "history of portal vein thrombosis with resultant end-stage cirrhosis complicated by esophageal varices, portal hypertension, and hepatic encephalopathy. He also has a small mass being monitored for potential hepatic carcinoma.” The State presented evidence that challenged Bid- *1124 die's assertions, including a photograph taken in March 2014 showing Biddle walking unaided through his sister’s neighborhood and one photograph taken at the same time showing Biddle holding a very large tree limb over one shoulder.

. The legislature recently amended the ASORCNA; those amendments will become effective September 2015.