[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15535
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-02322-VEH-JEO

ADAM KEITH WALDMAN,

Plaintiff-Appellant,

versus

ALABAMA PRISON COMMISSIONER,
CASSANDRA CONWAY,
Classification Director, in her individual and official capacity,
AMANDA BAGGETT,
Assistant Classification Director, in her individual and official capacity,
MRS. COOLEY,
Classification Specialist, in her individual and official capacity,
CAPTAIN BUTLER,
in her individual and official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 26, 2017)

Before TJOFLAT, FAY and MARCUS, Circuit Judges.

PER CURIAM:

Adam Waldman, an Alabama prisoner proceeding *pro se*, appeals the District Court's dismissal of his complaint under 42 U.S.C. § 1983 against five officials from the Alabama Department of Corrections ("ADOC") on his claims that the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA") and the ADOC classification manual violated his procedural due process, substantive due process, and *ex post facto* rights. Waldman first argues that the ADOC officials violated his Fourteenth Amendment procedural due process rights by classifying him as a sex offender without providing notice, a hearing, or a chance to present evidence or witnesses. Second, he contends that the ADOC officials violated his Fourteenth Amendment substantive due process rights by classifying him as a sex offender when he was convicted of kidnapping and had never committed a sex offense. Finally, Waldman argues that the ADOC officials committed an *ex post facto* violation by imposing a greater punishment for his crime than existed at the time he was convicted. After reviewing the record and considering the parties' briefs, we affirm.

I.

In September 2005, Waldman was convicted in Alabama state court of first-degree robbery, first-degree attempted assault, and first-degree kidnapping of a minor, all under Alabama law. He was sentenced to two life sentences plus an additional ten years. Waldman argues, and Appellees do not contest, that his crime did not involve sexual conduct with the child he abducted. Rather, he claims that the trial record shows that he abducted the child in order to obtain a ransom or use the child as a shield or hostage. Nevertheless, Alabama law includes first and second-degree kidnapping of a minor in its list of "sex offenses" under ASORCNA. Ala. Code § 15-20A-5(18). Although ASORCNA was not enacted until 2011—six years after Waldman's conviction—its predecessor statute defined first and second-degree kidnapping of a minor as "sex offenses" as early as 1998—seven years prior to his conviction. *See id.* § 15-20-21 (1998).

Under ASORCNA, every adult sex offender, regardless of when his crimes were committed or when his duty to register arose, must register specified personal information in each county that he intends to reside, work, or attend school. *See id.* §§ 15-20A-3, 15-20A-7, 15-20A-10. Alabama law places several other limits on sex offenders, including in part: (1) a prohibition on residing within 2,000 feet of any school, childcare facility, resident camp facility, or any of their victims; (2) a prohibition on employment at any school, childcare facility, or any business that

3

provides services primarily to children, among other restrictions; and (3) a requirement to report any travel for a period of three or more consecutive days to the sheriff in each county of residence. *See id.* §§ 15-20A-11, 15-20A-13, 15-20A-15. At least 30 days prior to release, or immediately upon notice of release if release is in less than 30 days, the ADOC must inform sex offenders of their duty to register, provide the required registration information to the state and any planned counties of residence if within Alabama, and provide the required registration information to the state along with any information necessary to track the offender if the planned county of residence is outside of Alabama. *Id.* § 15-20A-9.

Moreover, ASORCNA and a predecessor provision enacted in 2005 make persons convicted of "sex offenses" ineligible for parole. *See id.* § 15-22-27.3 (2017); *id.* (2005). The Alabama legislature stated that ASORCNA's purpose was to further the State's interest in protecting vulnerable populations, particularly children. *Id.* § 15-20A-2(5). The legislature noted that its intent was "not to punish sex offenders but to protect the public and, most importantly, promote child safety." *Id.*

Pursuant to ASORCNA, the ADOC adopted a classification manual that classifies inmates according to the type of offense of which they were convicted. The ADOC classification manual prescribes that inmates who have been convicted

4

of a sex offense should receive an "S" suffix added to their inmate number.[1]  It also renders them ineligible for minimum custody, which means they must necessarily be made ineligible for work release and other early-release programs as well.  Waldman also contends that, due to his "S" classification, he is forced to attend classes or group therapy sessions for sex offenders in prison.  The manual requires prison officials to notify an inmate at least 24 hours in advance before changing his classification, in order to allow him to present information that could bear on their classification decision.

Waldman contends that prison officials classified him as a sex offender pursuant to the ADOC manual in May 2013, many years after his confinement began.  He alleges that those officials failed to observe the ADOC classification manual's 24-hour notice requirement before doing so.  After failing to obtain relief by protesting the classification to prison officials, Waldman brought this lawsuit *pro se*, filing a verified complaint under 42 U.S.C. § 1983 against five ADOC officials in their official and individual capacities.  He alleged in his complaint that those officials violated his due process rights by classifying him as a sex offender when he had never been convicted of a sex offense.  He further alleged that the classification constituted a violation of the *Ex Post Facto* and Double Jeopardy Clauses, and that he was subjected to a bill of attainder.  He sought compensatory

---

[1] The ADOC manual is not in the appeal record, but the parties agree that the manual includes these provisions.

5

and punitive damages, declaratory and injunctive relief, and to have the "S" suffix removed from his inmate number and file.

Before Waldman served process, a Magistrate Judge entered a report and recommendation (R&R) recommending that the District Court dismiss the complaint under 28 U.S.C. § 1915A(a) for failure to state a claim. The District Court accepted the R&R in part and rejected it in part. The part it rejected concerned Waldman's procedural due process claim: the Court found that the Magistrate Judge erroneously relied on this Court's holding in *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999) (per curiam), to deny that Waldman possessed a liberty interest in not being classified in prison as a sex offender. Nevertheless, the Court dismissed Waldman's claim in full for failure to state a claim for relief. Waldman timely appealed.

## II.

We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim for relief under 28 U.S.C. § 1915A(b). *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). A district court's denial of leave to amend due to futility is also reviewed *de novo*. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006) (per curiam). We may affirm on any ground supported by the record, regardless of whether that ground

6

was relied upon or even considered below.  *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

Under 28 U.S.C. § 1915A(a), the district court must screen any complaint in which a prisoner seeks redress from a governmental entity or officer.  28 U.S.C. § 1915A(a).  The court must dismiss any complaint that fails to state a claim upon which relief may be granted.  *Id.* § 1915A(b)(1).  To avoid dismissal for failure to state a claim, a complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Jones*, 787 F.3d at 1106–07.  The complaint's factual allegations must be accepted as true.  *Id.* at 1107.  A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed.  *Id.*  However, a *pro se* pleading must still suggest that there is at least some factual support for a claim. *Id.*  Issues not briefed on appeal by *pro se* litigants are deemed abandoned.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

We review each of Waldman's arguments sequentially.  We find that the District Court did not err in dismissing Waldman's complaint for failure to state a claim upon which relief could be granted.

### a. *Procedural Due Process*

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  A prisoner

can be deprived of his liberty such that due process is required in two contexts: (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court"; or (2) "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby*, 195 F.3d at 1290–91 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2301 (1995)).

We conclude that the District Court did not err when it dismissed Waldman's procedural due process claim for failure to state a claim. Waldman's procedural due process claim rests on three arguments: (1) in classifying him as a sex offender pursuant to ASORCNA and the ADOC classification manual, prison officials deprived him of a liberty interest by triggering post-release conditions, (2) prison officials failed to afford him the process he was owed by failing to follow the classification manual's notice requirements, and (3) in classifying him as a sex offender pursuant to ASORCNA and the ADOC classification manual, prison officials deprived him of a liberty interest by changing the conditions of his confinement. We address those arguments in order.

First, insofar as Waldman challenges ASORCNA's post-release restrictions, such as the travel restriction, that challenge is not ripe. To determine whether a

8

claim is ripe, we must weigh two factors: "(1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review." *Id.* at 1290. As part of the first factor, we ask whether the plaintiff "has suffered injury or come into immediate danger of suffering injury." *Id.* A merely speculative threat of injury is insufficient. *Id.*

Here, there is no indication that Waldman is due to be released at any point in the foreseeable future. *See id.* at 1290. Waldman was sentenced to two life sentences and an additional ten years. The first of ASORCNA's post-release conditions, the notification requirement, does not attach until 30 days prior to an inmate's release. *Id.* Thus, with respect to any post-release conditions that might be imposed on him, the threat of injury is merely speculative at this point.

Next, to the extent that Waldman challenges ADOC officials' application of the notice requirements in the ADOC classification manual, his claim is barred by the Eleventh Amendment. Such a challenge is not a procedural due process challenge—it is a claim that state officials violated state law in carrying out their official responsibilities. Claims of that nature are barred by the Eleventh Amendment, even when, as here, they are brought into federal court as pendent claims coupled with suits raising federal questions. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 120–21, 104 S. Ct. 900, 918 (1984). We thus lack jurisdiction to consider that claim.

9

As to Waldman's challenge to his inmate classification as a sex offender under the ADOC classification manual, Waldman does not have a liberty interest in not being classified as a sex offender, because he was convicted of a sex offense under Alabama law. Waldman cites our decision in *Kirby* to support his argument that he has a liberty interest in not being classified as a sex offender, but *Kirby*'s holding does not reach Waldman's situation. In *Kirby*, we considered challenges made by two prisoners to Alabama's Community Notification Act ("CNA"), the predecessor to ASORCNA. *Kirby*, 195 F.3d at 1287–88. One of those prisoners, Robert Edmond, was convicted of attempted murder, but was classified as a sex offender by the ADOC despite never having been convicted of a sex offense. *Id.* His classification was based on previous charges of rape and sexual assault, although neither resulted in a conviction. *Id.* Edmond argued that the classification made him ineligible for minimum-custody classification—including work-release and community-custody programs—and imposed a stigma that imposed a significant hardship in relation to the ordinary incidents of prison life. *Id.* He further asserted that he received neither notice nor an opportunity to be heard prior to the classification. *Id.*

We concluded that Edmond had a liberty interest in not being branded as a sex offender because the classification altered the conditions of confinement so severely that it essentially exceeded the sentence imposed by the court. *Id.* at

10

1288, 1291. We thus held that an "inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Id.* We then remanded the case to the district court to determine whether Alabama provided Edmond with enough pre-classification process to satisfy the Constitution. *Id.*

The facts in *Kirby* reveal a critical distinction: the challenger in that case was never convicted of a crime that was classified by law as a sex offense. In contrast, in this case, Waldman was convicted of a crime that was statutorily categorized under Alabama law as a sex offense at the time of his conviction and has remained so ever since. Although the Alabama legislature did not enact ASORCNA until 2011, six years after Waldman's conviction, ASORCNA's predecessor statute had, since 1998, also classified kidnapping of a minor as a sex offense. *See* Ala. Code § 15-20-21 (1998). Thus, ADOC officials' classification of him as a sex offender, and the ADOC classification manual they were following in doing so,[2] were both consistent with preexisting Alabama law.

Indeed, because first-degree kidnapping counted as a sex offense under Alabama law when Waldman was convicted, our decision in *United States v. Veal*,

---

[2] Although the ADOC classification manual was not included in the record now before us, Waldman concedes that he was convicted of an offense defined as a sex offense by that manual pursuant to ASORCNA. And since the classification manual is consistent with ASORCNA, which in turn is consistent with its predecessor statute that was in place prior to Waldman's conviction, Waldman cannot argue that the ADOC classification manual or ASORCNA amounted to a change in the law that deprived an interest he previously possessed in not being classified as sex offender.

322 F.3d 1275 (11th Cir. 2003) (per curiam), controls in this case. In *Veal*, we held that a federal prisoner convicted of transporting or shipping child pornography was properly subject to a special condition of supervised release requiring that he register with the appropriate State Sexual Offender Registration Agency upon release. *Id.* at 1278. Although Veal argued that both the record and his personal history in no way demonstrated that he had had sexual contact with children, we concluded that his reliance on *Kirby* was misplaced because he pled guilty to a federal offense that was categorized as a sex crime under federal law at the time of his conviction. *Id.* Thus, we concluded that no further process was owed him before he was classified as a sex offender. *Id.*

Although *Veal* differed from this case in that it addressed a challenge to post-release conditions rather than inmate-classification conditions, its rationale applies equally in both contexts. There, as here, the challenger was convicted of a crime the governing jurisdiction classified as a sex offense at the time of conviction. As a result, in *Veal* and in this case, the only stage at which procedural due process could be measured with respect to the challengers' status as sex offenders was the conviction stage. Any subsequent sex offender classifications did not "deprive" the challengers of any constitutionally protected interests, because those interests did not survive conviction.

12

We therefore conclude that since Waldman was convicted of a crime that constituted a sex offense under Alabama law at the time of his conviction, he was not entitled to any additional process before being classified as a sex offender by prison officials.  The District Court therefore did not err in finding that Waldman failed to raise a cognizable procedural due process claim.[3]

### b. Substantive Due Process

We now turn to Waldman's substantive due process claim.  A violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure.  *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc).  The Fourteenth Amendment forbids the government from infringing fundamental liberty interests at all, unless the infringement is narrowly tailored to serve a compelling state interest.  *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997).  Analysis of a substantive due process claim must begin by crafting a careful description of the asserted right.  *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005).  Then, we must determine whether the asserted right is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (quotations omitted)

---

[3] The District Court did err, however, insofar as it recognized that Waldman had a liberty interest in not being classified as a sex offender.  One part of the Court's opinion seems to suggest that Waldman sufficiently identified such an interest.  However, the Court never explained how this was so, and it nevertheless dismissed Waldman's complaint.  Because the Court's dismissal was proper, this error did not affect the disposition of Waldman's claim.

13

(quoting *Glucksberg*, 521 U.S. at 720–21, 117 S. Ct. at 2268).  We have previously concluded, in the context of Florida's sex offender registration statute, that the right of a sex offender to refuse subsequent registration of his or her personal information with state law enforcement and prevent publication of that information on the state sex offender website is not "deeply rooted."  *Id.* at 1345.  We noted that a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy.  *Id.*

Where a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S. Ct. 1708, 1716 (1998).  Executive action is arbitrary in a constitutional sense when it "shocks the conscience."  *Id.* at 846, 118 S. Ct. at 1717.  Only the most egregious conduct is sufficiently arbitrary to constitute a substantive due process violation.  *Tinker v. Beasley*, 429 F.3d 1324, 1328 (11th Cir. 2005) (per curiam).  For example, conduct designed to injure someone in a fashion that is not justified by any government interest may rise to the conscience-shocking level.  *Id.*  To wit, a coach shocked the conscience when he, as a disciplinary measure, deliberately struck a high school student's eye with a heavy object with enough force to cause

14

permanent blindness.  *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000).

Here, the District Court did not err when it dismissed Waldman's substantive due process claim.  To the extent that Waldman challenges ASORCNA's post-conviction conditions, that challenge is not ripe for the same reasons discussed above.  *See Veal*, 322 F.3d at 1278; *Kirby*, 195 F.3d at 1289.  With respect to the prison conditions imposed by the classification, those conditions do not infringe any fundamental rights, and such conditions do not shock the conscience.  We have already determined that sex offender registration laws do not infringe upon fundamental rights, and the same reasoning applies to inmate classification.  *See Moore*, 410 F.3d at 1344–45.  Moreover, although Waldman's offense did not involve sexual contact with a minor, the prison conditions imposed on him, like the requirement that he attend sex offender classes or therapy and his ineligibility for work release, further the goal of protecting children and are not so egregious as to "shock the conscience."  Waldman was convicted of kidnapping a minor, and he admits that he did so for ransom or to use the child as a shield; he can hardly argue that the State shocks the conscience by imposing restrictions on his release in the name of protecting children.  *See Tinker*, 429 F.3d at 1328 (stating that conduct must be not be justifiable by any

15

government interest in order to rise to the "conscience shocking" level necessary to amount to a substantive due process violation).

In sum, we conclude that the District Court did not err in concluding that Waldman did not raise a cognizable substantive due process claim.

### c. Ex Post Facto Clause

The *Ex Post Facto* Clause prohibits imposition of laws that punish acts that were not punishable when committed, or laws that increase the punishment for an act after that act has been done. *United States v. W.B.H.*, 664 F.3d 848, 852 (11th Cir. 2011). The *ex post facto* bar applies only to criminal laws, however, not to civil regulatory regimes. *Id.*

Here, we consider Waldman's arguments sequentially and conclude that the District Court did not err in dismissing his *ex post facto* claim. First, with respect to his challenge of ASORCNA's post-release conditions like the travel restriction, that challenge is not ripe for the same reasons already discussed. *See Veal*, 322 F.3d at 1278; *Kirby*, 195 F.3d at 1289.

Next, with respect to his argument that the classification renders him ineligible for parole and thus changes the original terms of his sentence, Waldman has sued the wrong defendants and therefore lacks standing to make that challenge in this case. In order to establish standing, a plaintiff must show that (1) there is an "injury in fact," (2) the injury is causally traceable to the defendant, and (3) the

16

plaintiff's injury can be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992).  Else, the case is not a "case or controversy" under Article III and federal courts lack jurisdiction over it. *Id.* at 560, 112 S. Ct. at 2136.

The officials named in Waldman's suit do not set the standards for parole eligibility, nor does the ADOC classification manual.  Rather, ASORCNA does. *See* Ala. Code § 15-22-27.3 (denying parole eligibility to anyone convicted of a "sex offense" involving a child).  Nor do they make parole decisions with respect to individual inmates.  That authority is vested in the Alabama Board of Pardons and Paroles.  *Id.* § 15-22-36(a).  Thus, even if Waldman were to prevail against the named officials, they would not be able to redress his injury.  The proper defendant with regard to Waldman's *ex post facto* challenge of the denial of his parole eligibility, or with regard to how his "S" classification will be treated by parole officials, is the Board of Prisons and Paroles, not the officials named in his complaint.  We thus lack jurisdiction over that claim.

Finally, with respect to his argument that the prison conditions imposed on him as a result of his classification constitute *ex post facto* punishment, the District Court did not err in finding that he did not state a valid *ex post facto* claim. Although Waldman's classification was changed years after his incarceration began, he did not allege that the ADOC classification manual changed the

17

classification protocol previously in place.  Even assuming it did, the manual simply changed the State's classification protocol to reflect longstanding Alabama statutory law, which classified child kidnapping as a "sex offense" years before Waldman's conviction.  He thus cannot argue that his reclassification punished previously unpunishable conduct, or that it increased a preexisting punishment.

In any event, Waldman concedes that the ADOC classification manual was implemented pursuant to ASORCNA, and ASORCNA's stated purpose is civil, not punitive, in nature.  *See id.* § 15-20A-2(5) ("The Legislature declares that its intent in imposing certain registration, notification, monitoring, and tracking requirements on sex offenders is not to punish sex offenders but to protect the public and, most importantly, promote child safety.").  When a legislature expressly states its intent, only the "clearest proof" will suffice to show that a statute's true intent is punitive.  *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 1147 (2003).  Moreover, a state can make a reasonable categorical judgment that conviction of specified crimes should entail particular regulatory consequences. *Id.* at 103, 123 S. Ct. at 1153.

To show that a regulatory scheme with a stated civil purpose is so punitive as to rise to the level of an *ex post facto* violation, we consider primarily five factors:  whether the scheme "has been regarded in our history and traditions as a punishment"; whether it "imposes an affirmative disability or restraint"; whether it

18

"promotes the traditional aims of punishment"; whether it "has a rational connection to a nonpunitive purpose"; and whether it "is excessive with respect to [its stated] purpose." *Id.* at 97, 123 S. Ct. at 1149.

Here, taken as true, none of the allegations in Waldman's complaint would provide the "clearest proof" necessary to override the presumption that Alabama's stated civil intent to protect children is actually punitive. *See Windwalker v. Governor of Ala.*, 579 F. App'x 769, 772 (11th Cir. 2014) (per curiam) (concluding ASORCNA's post-release restrictions are rationally connected with its stated civil purpose to protect minors). Since any challenge to ASORCNA's post-release requirements are not ripe in this case, we must review only the confinement conditions imposed by the ADOC classification manual.

With respect to those confinement conditions, examination of the above factors reveals that many of them cut against Waldman. We specifically note the factor the Supreme Court has identified as the most "significant" one in the *ex post facto* analysis: rational connection. *Smith*, 538 U.S. at 102, 123 S. Ct. at 1140. Here, a rational connection clearly exists between Alabama's stated goal of protecting minors and the minimum-custody restrictions and rehabilitation classes imposed as a result of Waldman's "S" classification. The connection need not be perfect. A statute does not have a punitive purpose "simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Id.* Thus, we

19

conclude that the allegations in Waldman's complaint failed to demonstrate that the ADOC classification manual's custody restrictions are so restrictive as to override ASORCNA's stated civil purpose.  Waldman thus did not raise a cognizable *ex post facto* claim.

### III.

For the foregoing reasons, we conclude that Waldman did not state a cognizable claim upon which relief could be granted.  Therefore, the District Court did not abuse its discretion in dismissing his claim.

**AFFIRMED in part and DISMISSED in part for lack of jurisdiction.**