[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13216
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-01624-GKS-KRS

JACKIE JAMAL HINES,

Plaintiff-Appellant,

versus

JACK PARKER,
Official Capacity, et al.,

Defendants,

SHAYLA EDWARDS,
Individual Capacity,
STEPHEN EGGLESTO,
Individual Capacity,
NICK PAUL,
Individual Capacity,
RICKI MEYERS,
Individual Capacity,
CRISSY WALLSCHAGLER,
Individual Capacity,
SHANNON HUGHES,
Individual Capacity, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 15, 2018)

Before TJOFLAT, WILLIAM PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Jackie Hines, a Florida prisoner, appeals *pro se* the partial dismissal and partial summary judgment against his second amended complaint against officials at the Brevard County Detention Center; its medical services provider, Armor Correctional Health Services, Inc.; its medical staff; and Dr. Robert Sedaros, an orthopedic surgeon. 42 U.S.C. § 1983. Hines alleged that the officials were deliberately indifferent to his medical needs during his pretrial detention by failing to provide prompt and effective treatment for an injury he suffered while playing basketball with other detainees. The district court ruled that Hines failed to state a claim against Sheriff Jack Parker, Armor Correctional, Dr. Juan Nunez, or Nurse Practitioner Ginny Browning for inadequate palliative care; against Nurse Rickee Meyers for postponing Hines's orthopedic appointment; against Administrator Crissy Wallschlager based on her supervisory liability; and against Dr. Sedaros for failing to prescribe physical therapy after surgery. *See* Fed. R. Civ. P. 12(b)(6). The district court also dismissed Hines's complaint against Deputy Shannon Hughes

2

for denying emergency care based on qualified immunity. Later, the district court entered summary judgment against Hines's complaints against Sheriff Parker and Armor Health for adopting policies that resulted in substandard fracture care for inmates and against Dr. Nunez, Nurse Practitioner Browning, and Nurse Practitioner Nick Paul for delaying diagnostic treatment. The district court also denied as futile Hines's motions to file a third amended complaint. We affirm.

Hines has abandoned any challenge to the dismissal of his complaint against Sheriff Parker, Armor Health, and Dr. Nunez for Hines's post-accident palliative care. Although we read liberally *pro se* litigants' briefs, issues that they fail to brief on appeal are deemed abandoned. *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). Hines does not dispute that he failed to state a claim of deliberate indifference against Sheriff Parker, Armor Health, or Dr. Nunez for providing Tylenol-3 for Hines's pain instead of giving him Motrin, aspirin, or a steroid injection.

The district court did not err by dismissing Hines's complaint that Nurse Practitioner Browning exhibited deliberate indifference to Hines's pain by providing a substitute pain medication after his surgery. To state a claim of deliberate indifference, Hines had to allege that Nurse Practitioner Browning's conduct was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Harris v. Thigpen*,

3

941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Hines alleged that Dr. Sedaros prescribed Tylenol-3 for post-surgery pain, but Nurse Practitioner Browning instead gave Hines aspirin and Motrin. Hines also alleged that Nurse Practitioner Browning withheld Tylenol-3 after Hines received a steroid shot and a prescription from Dr. Nunez for a different pain medication. Hines's disagreement with Nurse Practitioner Browning's choice of which pain medicine to administer does not establish deliberate indifference. *See id.*

The district court correctly dismissed Hines's complaint against Deputy Hughes based on qualified immunity. Deputy Hughes acted within the scope of her discretionary authority as the head of security for the sick clinic and was immune from suit unless she acted with deliberate indifference to Hines's serious medical need for emergency treatment. *See Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). Hines alleged that Deputy Hughes detained him in a holding cell after he returned to the sick clinic and sought to be transported to a hospital even though the nurses diagnosed him earlier with a sprained elbow and explained to him that he did not require emergency care. Hines alleged nothing to suggest that Deputy Hughes knew or would have known that Hines had a serious medical need that required immediate attention or that Hines's condition was "so obviously

4

dire that . . . [Deputy Hughes] must have known that [the] medical professional[s] had grossly misjudged [Hines's] condition." *See id.* at 1159.

The district court did not err by dismissing Hines's complaint against Administrator Wallschlager for failing to intercede in Hines's treatment after receiving his medical grievances. Administrator Wallschlager made no decisions involving Hines's treatment, so for supervisory liability to exist, Hines had to establish a causal connection between Administrator Wallschlager's inaction and the alleged violation of Hines's constitutional rights. *See Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). A causal connection can exist when the facts alleged support an inference that the supervisor knew subordinates would act unlawfully and failed to stop them. *See id.* Hines alleged that Administrator Wallschlager "answered" Hines's grievances about "being deprived of medical treatment for [his] broken and dislocated arm," but Hines's dissatisfaction with his course of treatment did not amount to deliberate indifference to his medical needs. *See Harris*, 941 F.2d at 1505. Hines's grievances did not notify Administrator Wallschlager of a constitutional violation she was obliged to stop.

The district court also did not err by dismissing Hines's complaint against Dr. Sedaros for failing to prescribe physical therapy after surgically implanting orthopedic hardware. Hines alleged that Dr. Sedaros urged Hines to "move his arm as soon as possible and as much as possible" and "demonstrated" exercises, which

5

was consistent with the surgeon's records that he "recommend[ed] aggressive self-directed physical therapy since [Hines] is in the jail system and formal physical therapy is not an option for him" and "instructed [Hines] specifically on pronation and supination exercises." Hines argues that Dr. Sedaros refused to order physical therapy because the jail would not pay for it, but Hines failed to allege that Dr. Sedaros's treatment was "so cursory as to amount to no care at all," *see McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Hines's disagreement with Dr. Sedaros's decision to have Hines perform exercises instead of sending him to a physical therapist "is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability" for deliberate indifference. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (internal quotation marks and citation omitted).

Hines also failed to state a claim of deliberate indifference against Nurse Meyers who told Hines that Dr. Sedaros's office had postponed his initial appointment and then remarked, "[s]o next time do not break your arm around the holidays." That Nurse Meyers was the bearer of bad news and allegedly delivered that news tactlessly did not amount to deliberate indifference. *See Harris*, 941 F.2d at 1505. Although a delay in treatment may constitute deliberate indifference to a prisoner's serious medical needs, *see Harris v. Coweta Cnty.*, 21 F.3d 388, 393–94 (11th Cir. 1994), Hines did not allege that Nurse Meyers caused the delay.

The district court did not err by entering summary judgment in favor of Sheriff Parker and Armor Health and against Hines's complaints that they adopted policies to allow "gross deficiencies" in staff and equipment and that those deficiencies resulted in Hines being denied emergency treatment. To impose liability on municipal actors for a custom or policy, a plaintiff must prove that the municipality adopted an official policy of, or engaged in a persistent and widespread practice of acting with, deliberate indifference to the known or obvious consequences of their conduct. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). Hines offered no evidence of a decision by or custom of Sheriff Parker or Armor Health that resulted in inmates receiving inferior fracture care. Sheriff Parker and Armor Health submitted the affidavit of Steven Shelton, a physician and medical expert, that established Hines received "[s]tandard treatment . . . at the Brevard County Jail by all healthcare personnel" that "met community medical and correctional level[s] of care for evaluation, monitoring, and ongoing medical care." Shelton averred that Hines did not manifest "the need for" or "meet medical criteria for an emergency hospital response"; he received "ongoing medical care . . . for his pain" without "complaints of the medication . . . being inadequate"; Dr. Sedaros did not report "surgery [was] emergent"; and Hines received post-operative care consistent with Dr. Sedaros's orders. Hines submitted an affidavit stating that his treatment was inadequate and affidavits from two inmates who

7

averred the clinic made them wait for diagnostic treatment of their broken bones. But conclusory statements by Hines and his fellow inmates that they were "delayed proper medical treatment" failed to create a material factual dispute about the timeliness or quality of Hines's medical care. *See* Fed. R. Civ. P. 56(a).

The district court also did not err by entering summary judgment in favor Nurse Practitioner Browning, Dr. Nunez, and Nurse Practitioner Paul and against Hines's complaints about delays in diagnostic treatment. Shelton's affidavit established that "there [was] no action or inaction on the part of Dr. Nunez[ or] the medical providers . . . at the Brevard County jail . . . which was either detrimental or non-responsive to [Hines's] care." The district court was entitled to credit that opinion in the light of the evidence that Nurse Practitioner Browning administered ibuprofen for Hines's pain when he first appeared at the sick clinic and the next day issued an order for him to receive an ice pack, sling, ibuprofen, and an assignment to a low bunk; that Dr. Nunez reviewed the radiologist's report the day it was prepared, treated Hines for what appeared to be a chipped bone, and referred Hines for an orthopedic evaluation; and that Nurse Practitioner Paul gave Hines a checkup during which he did not complain about pain pending his surgery. The delays in treating Hines's fracture were attributable to Dr. Sedaros, whose office scheduled Hines's initial appointment, postponed that appointment, and set the date for surgery. Hines alleged that Nurse Practitioner Browning should have

8

transferred him for emergency care and that Dr. Nunez should have provided emergency treatment for the "fracture dislocation" that Dr. Sedaros discovered 11 days later. At most, Hines alleged "negligen[ce] in diagnosing or treating [his] medical condition," which is not "sufficiently harmful to evidence deliberate indifference to [a] serious medical need[]." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Hines argues that delays attributable to the policies of Sheriff Parker and Armor Health and the misdiagnoses by Nurse Practitioner Browning and Dr. Nunez exacerbated his injury, but Hines "place[d] [no] verifying medical evidence in the record to establish the detrimental effect of delay," *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). Hines averred that Dr. Sedaros said Hines would not "use [his] arm the same again" because of the delay, but the district court correctly disregarded the statement as inadmissible hearsay. *See* Fed. R. Evid. 801(c); *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Hines's affidavit was not "made on personal knowledge[ and] set out facts that would be admissible in evidence . . . ." *See* Fed. R. Civ. P. 56(c)(4). Hines argues that Dr. Sedaros's statement fell within the hearsay exception for admissions by a party opponent, but Hines offered Dr. Sedaros's statement as evidence of misadministration by Sheriff Parker and Armor Health and negligence

9

by Nurse Practitioner Browning and Dr. Nunez, not of maltreatment by Dr. Sedaros, who was neither an agent or employee of the detention center or its medical contractor. *See* Fed. R. Evid. 801(d)(2). Shelton's affidavit established that Hines's "decreased range of motion and arthritis" was attributable to damage that "occur[red] at the moment of [his] injury."

Hines also provided no evidence that Dr. Sedaros's failure to remove the orthopedic hardware amounted to deliberate indifference. Dr. Sedaros submitted an affidavit from Dr. Jeffrey Deren, an orthopedic surgeon, that established, without dispute, that Dr. Sedaros's "post-operative recommendations to Mr. Hines met the orthopedic standard of care" based on medical records showing that the hardware "was in proper position" and contributed to a "well-aligned radial head"; that Hines achieved "full flexion and full pronation" six months after surgery; and "[a]ny right elbow problems . . . Mr. Hines claim[ed]" to have were "not hardware-related" and were "most likely due to the nature of his original injury." Hines's lay opinion that his condition warranted removal of the hardware was insufficient to create a genuine factual dispute about Dr. Sedaros's medical judgment. *See Harris*, 941 F.2d at 1505.

The district court did not abuse its discretion when it denied Hines's motions for leave to file third amended complaints adding Deputy John Kanzlemar and Nurse Michelle Clark as defendants. Hines moved to add Deputy Kanzlemar more

than two years after filing the complaint, at which point the defendants had moved for dismissal and discovery had ended. Hines waited another eight months before seeking to add Nurse Clark and, during that interim, the remaining defendants had moved for summary judgment. "Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. Ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (quoting *Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000)) (internal quotation marks omitted and alterations adopted). The district court reasonably rejected Hines's requests for leave on the grounds that the amendments "would result in undue prejudice," "in additional discovery, [and] delay the disposition of [the] case." Furthermore, the district court reasonably determined that it would be futile to add a complaint against Deputy Kanzlemar for denying Hines access to a brace when Hines did not allege that Dr. Sedaros had prescribed a brace or "that the absence of [a] brace caused . . . or worsened [Hines's] medical condition." And we cannot fault the district court for denying Hines's belated motions when he provided no reason for his delays. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (applying Federal Rule of Civil Procedure 16(b)).

We **AFFIRM** the judgment against Hines's second amended complaint and

11

in favor of the officials at the detention center, Armor Health, its medical staff, and

Dr. Sedaros.