[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-12031

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LEE RODGER LARSON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:21-cr-00026-AW-GRJ-1

————————————————

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Lee Larson conditionally pleaded guilty to two charges relating to the unlawful possession of a short-barreled shotgun. As part of his plea, he reserved his right to challenge the district court's denial of his motion to suppress evidence. He now exercises that right, appealing that denial to this Court. Because Larson was not detained until after the arresting officer had reasonable suspicion that he was in possession of stolen property, we affirm.

## I.

At about 10:30 p.m. on May 31, 2021, Lieutenant Rebecca Butscher saw Larson sitting next to a wheelchair and multiple bags on the side of West Newberry Road in Gainesville, Florida. Larson was eating food from a free food pantry that a church kept nearby. Butscher pulled over and turned on her vehicle's spotlight and emergency lights. She and Larson talked, and she asked him for identification. When Larson opened his bag to look for his identification, Butscher shone her flashlight into his bag and saw a sheathed knife.[1] Larson was unable to find his identification.

---

[1] Larson testified that he had already disclosed the existence of this knife before opening his bag—a detail that, if true, Butscher omitted from her testimony. The district court did not decide whether this disclosure occurred.

Butscher was not particularly concerned about the knife, but she did ask Larson to move in front of her car while she ran his name and birthdate through the teletype. She discovered that he had an outstanding, non-extraditable Minnesota warrant for having received stolen property.

Two or three more officers arrived on the scene, and they also pulled over and turned on their emergency lights. One of their vehicles had a dashcam video that Larson introduced into the record. Butscher and Larson continued talking about Larson's homelessness, his recent arrival in Gainesville, and his criminal history including convictions for burglary and dealing in stolen property.

Butscher then noticed that Larson had a stack of twenty-to-thirty vinyl records with him, which she suspected were stolen.[2] She proceeded to pat him down, and he told her that he had a pocketknife, marijuana, and marijuana paraphernalia. He also volunteered that he had a sawed-off shotgun in one of his bags. Butscher immediately arrested Larson.

Larson was indicted on two charges, possession of a firearm and ammunition as a felon and possession of an unregistered short-barreled shotgun. He pleaded not guilty and moved to suppress the evidence seized during the stop, arguing that he had been detained unconstitutionally from the beginning of his interaction

---

[2] Butscher later verified that the vinyl albums were not stolen.

with Butscher and, in the alternative, that he was detained unconstitutionally at some later point. He specifically disclaimed any challenge to the search of his bag. The United States argued that the encounter was consensual until some point after Butscher developed reasonable suspicion and/or probable cause sufficient to justify any detention that occurred.

After a hearing at which both Larson and Butscher testified, the court denied Larson's motion to suppress. It reasoned that the encounter was consensual at least until Butscher saw the knife and that, at all points after that, she had reasonable suspicion to detain Larson—first due to the possession of the knife, and then due to the possibility that the vinyl records were stolen. Larson then changed his plea to a conditional guilty plea, and he now appeals the denial of the motion to suppress.

## II.

"In reviewing the denial of a motion to suppress, we uphold the district court's findings of fact unless they are clearly erroneous and review its application of law to those facts de novo." *United States v. Woodson*, 30 F.4th 1295, 1302 (11th Cir. 2022). "We may affirm on any ground supported by the record." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

## III.

## A.

Larson first argues that he was unlawfully detained—either because he was detained without reasonable suspicion or because his detention was unlawfully prolonged.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Consistent with the Fourth Amendment, an officer may perform a limited investigatory detention of someone whom she reasonably suspects has committed criminal activity. *United States v. Bruce*, 977 F.3d 1112, 1116 (11th Cir. 2020) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Such stops may last only as long as is necessary to achieve their limited investigatory purpose. *See United States v. Campbell*, 26 F.4th 860, 882 (11th Cir. 2022) (en banc). Additionally, with or without reasonable suspicion, an officer may approach an individual and ask him questions, so long as a "reasonable person would feel free to terminate the encounter." *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quotation omitted).

Working backward from the moment of Larson's arrest, we first have no difficulty in determining that Butscher had reasonable suspicion to detain Larson from the moment she learned about the vinyl records until the moment she arrested him. Butscher knew that Larson had an outstanding warrant and prior conviction for dealing in stolen property. It is out-of-the-ordinary for a homeless man to be traveling with twenty-to-thirty antique vinyl records and

no record player or apparent reason for possessing the records. And the duration of any investigatory detention after Butscher became aware of the records was no longer than necessary for its investigatory purpose; after Butscher learned about the records, she asked to pat Larson down, and then he quickly admitted to possessing marijuana and the shotgun, giving Butscher probable cause to arrest him.

Before Butscher learned about the vinyl records, we conclude that Larson had not been detained, because a reasonable person would have felt free to terminate the encounter. *See Jordan*, 635 F.3d at 1186. To determine whether an individual has been detained, we consider the following factors as part of a holistic, totality of the circumstances analysis: (1) "whether a citizen's path is blocked or impeded"; (2) "whether identification is retained"; (3) "the suspect's age, education and intelligence"; (4) "the length of the suspect's detention and questioning"; (5) "the number of police officers present"; (6) "the display of weapons"; (7) "any physical touching of the suspect"; and (8) "the language and tone of voice of the police." *Id.* (quotations omitted). Our consideration of the factors is not rigid, because the "ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Id.*

In this case, we consider factors (6), (7), and (8) to be particularly instructive. During the entire conversation with Larson before Butscher became aware of the vinyl records, no

officer used any coercive means to indicate that Larson was not free to leave.  As the district court specifically found, no weapon was drawn.  No one touched Larson.[3]  And the interaction remained cordial; Larson and Butscher joked with each other, and Butscher did not curse, yell, threaten Larson, or otherwise engage in coercive speech.

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Jordan*, 635 F.3d at 1186 (quotation omitted).  "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 201 (2002).  That is all that occurred here.  Butscher, and then other officers, pulled over and asked Larson questions.  But, at least prior to the patdown, they did not obtain Larson's cooperation through any coercive force.  Accordingly, Larson's movement was not "restrained by physical force or by submission to a show of authority." *See Jordan*, 635 F.3d at 1186.

Larson counters by arguing that he was detained from the moment that Butscher asked for his identification on a deserted road late at night when he had no means to leave the situation

---

[3] Larson testified it was possible one of the officers besides Butscher touched his arm, but he was uncertain, and Larson was not touched in any extensive capacity prior to the pat down.

other than by walking away.  And he claims he subjectively did not believe he was free to leave.   But when an officer asks for identification, that alone does not turn an encounter into a detention.  *Drayton*, 536 U.S. at 201.  Nor does Larson's subjective sense of whether he was free to leave affect what is an objective inquiry.  *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021).  The fact remains that, up until his patdown, the officers asked Larson questions without any display of coercive power. Such questions simply do not, on their own, amount to a detention under the Fourth Amendment.

At all times prior to his arrest, Larson either was not detained or any detention was supported by reasonable suspicion. The district court therefore correctly denied Larson's motion to suppress on this ground.

## B.

Larson also argues that an illegal search occurred when Butscher shone her flashlight into his bag.  But before the district court, he specifically disclaimed any challenge to the search of the bag.  We therefore review the challenge to the search of the bag only for plain error.[4]

---

[4] Larson seeks to avoid plain error review by arguing that, once he raised a federal claim below, he may make any and all arguments in support of that claim on appeal.  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995); *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992).  And he claims that his federal "claim" is that the evidence was obtained in violation of the Fourth Amendment.  If we allowed Larson to define his claim at this high of a

"When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Kushmaul*, 984 F.3d 1359, 1363 (11th Cir. 2021) (quotation omitted). Larson points to no precedent of this Court or the Supreme Court that establishes that shining a flashlight into an unzipped backpack constitutes a "search," nor does the plain text of the Fourth Amendment resolve the question. This challenge thus fails plain error review.

★    ★    ★

Larson's Fourth Amendment rights were not violated, and the district court therefore correctly denied his motion to suppress evidence. We **AFFIRM**.

---

level of generality, we would be making a mockery of our forfeiture caselaw. Because Larson did not challenge the search of the bag, the district court never analyzed the discrete issues posed by that search. That is why a defendant must *specifically* articulate an objection and the legal theory supporting it to preserve an issue for this Court's review. *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019).